C. F. Brown, Administrator, Appellant, v. Chicago, Rock Island & Pacific Railway Company.

Railroads: NEGLIGENCE: DEATH OF FIREMAN. In an action for the death of a fireman who left his cab and was at work about the engine in the switch yards of defendant when he was struck by another switch engine and killed, the evidence is considered and held that no negligence on the part of the defendant was shown.

*Appeal from Scott District Court.*—Hon. J. W. Bollinger, Judge.

*Thursday, December 18, 1902.

ACTION at law to recover damages for the death of Charles J. Goben. There was a trial, and a directed verdict for the defendant. From a judgment on the verdict, the plaintiff appeals.—*Affirmed.*

*Connelley & Connelley* and *W. M. Chamberlain* for appellant.

*Cook & Dodge* for appellee.

* Published out of its chronological order, by reason of motion for a rehearing.

SHERWIN, J.—For some time immediately preceding his death, and at the time thereof Charles J. Goben was at work for the defendant as a fireman on one of its switch engines in its yard near Valley Junction, Iowa. This yard is situated about five miles west of Des Moines, which is a division point on the line of the defendant's road, and is extensively used for the storage and movement of engines and cars. On the 22d day of June, 1898, at about six o'clock in the morning, the engine which the deceased fired, known as "34," was standing on the store house track in the said yard, and was in his charge. It was steaming at the time, and a considerable amount of the steam was escaping from the angle valve located near the forward end of the engine. About nine feet south of the store-house track was another track, and coming from the west on this track was another switch engine, which at the time was running at the rate of five or six miles an hour. This engine was operated by an engineer and fireman who had also been at work in the yard for some time, and was known as "46." Engine 34 was first seen by the fireman on engine 46 when about three hundred and fifty feet west of her, as th y were going east. At that time no one was in sight around 34. When 46 got within eighty or one hundred feet of 34, the deceased got out of the cab of 34, and walked east by her side to the angle valve from which the steam was escaping. He stopped there, took hold of the valve with his hand, and was apparently attempting to fix it. Both the engineer and fireman on engine 46 saw him leave the cab of his engine and go to the valve, and saw, in a general way, what he did there. The engineer of 46 was on the right side of his cab, and watched the deceased until his view was cut off by the front end of his own engine, which was then opposite the cab of engine 34, and when he last saw him he was still at work at the valve. The fireman of 46 watched the deceased until his engine was within eighteen or twenty feet of a point opposite to

where he was at work, when he lost sight of him by the intervention of the steam which was escaping from 34. The fireman testified that just at this moment Goben took his hand away from the angle valve and stepped backward with his face toward his own engine. It was shown by the testimony of a witness who was at the time some distance east of the point, that when Goben stepped back from the valve he faced a little northeast, and continued to step back until his feet were inside of the north rail of the track on which 46 was approaching. Goben was struck and killed, and the negligence charged was in the operation of engine 46, because of the failure to stop it when Goben was seen to take his hand away from the valve and step back, and because of the failure to blow the whistle while approaching, and more particularly at that particular time. Goben was perfectly familiar with the constant movement of engines and trains through that yard, and the engineer and fireman on engine 46 knew such to be the fact, and that he was the fireman in charge of engine 34. They were advised by his action in leaving his cab and going to the leaking valve that he was then engaged in the work of repairing or remedying some defect therein, and they would not have been justified in believing or assuming that he would leave that work and place himself in a position of danger. The bell on their engine was continuously rung as they were approaching the point where he was, and, while it is shown that he did not look toward them at any time, we think they had the right to assume, under the circumstances, that he knew of their approach, and that his familiarity with the work in the yard was such that the approach or passing of an engine occasioned no surprise, and called for no notice on his part. There was no negligence on the part of the defendant, and we need not discuss the question of the contributory negligence of the deceased.

The judgment is AFFIRMED.